**ORIGINAL**

FILED
Los Angeles Superior Court

JAN 17 2013

John A. Clarke, Executive Officer/Clerk
By _____, Deputy
SHAUNYA WESLEY

1  DOLL AMIR & ELEY LLP
   GREGORY L. DOLL (SBN 193205)
2  gdoll@dollamir.com
   RONALD M. ST. MARIE (SBN 101398)
3  rstmarie@dollamir.com
   L. KATIE FULSHER (SBN 268491)
4  kfulsher@dollamir.com
   1888 Century Park East, Suite 1850
5  Los Angeles, California 90067
   Tel: 310.557.9100
6  Fax: 310.557.9101

7  Attorneys for Plaintiffs Donny Misraje,
   Kathee Schneider-Misraje, and Sandy Ganz
8

9         SUPERIOR COURT OF THE STATE OF CALIFORNIA

10            FOR THE COUNTY OF LOS ANGELES

11  DONNY MISRAJE, an individual; KATHEE        Case No:   BC 499 379
    SCHNEIDER-MISRAJE, an individual; and
12  SANDY GANZ, an individual,                  COMPLAINT FOR:

13              Plaintiffs,                      1.  BREACH OF PARTNERSHIP
                                                    AGREEMENT;
14       v.                                      2.  BREACH OF FIDUCIARY DUTY;
                                                3.  DISSOLUTION OF PARTNERSHIP;
15  ADAM CAROLLA, an individual; LOTZI          4.  CONSTRUCTIVE TRUST;
    DIGITAL, INC., a California corporation, and 5.  CONVERSION;
16  DOE DEFENDANTS 1 through 15, inclusive,      6.  ACCOUNTING;
                                                7.  QUANTUM MERUIT;
17              Defendants.                      8.  BREACH OF EMPLOYMENT
                                                    CONTRACT;
18                                              9.  COMMON COUNT: FOR LABOR
                                                    PROVIDED;
19                                             10.  VIOLATION OF LABOR CODE;
                                               11.  VIOLATION OF BUSINESS AND
20                                                  PROFESSIONS CODE § 17200, et seq.
21

22       Plaintiffs Donny Misraje, Kathee Schneider-Misraje, and Sandy Ganz ("Plaintiffs"), for their

23  causes of action against Defendants Adam Carolla ("Carolla") and Lotzi Digital, Inc. ("Lotzi

24  Digital") (collectively, "Defendants"), and each of them, allege as follows:

25                          **INTRODUCTION**

26       1.    In February 2009, Defendant Adam Carolla, a radio and television personality, was at

27  a professional crossroad due to the abrupt cancellation of his syndicated radio talk show.  Plaintiff

28  Donny Misraje, a very close friend of Carolla's for over 30 years, had a successful career in the

                              1
                         **COMPLAINT**

1  entertainment industry as a producer and editor.  Having tried to guide Carolla (who is admittedly

2  "computer illiterate") in the direction of internet entertainment for years, Mr. Misraje now saw the

3  perfect opportunity for Carolla to transform his traditional radio audience into podcast listeners.

4  Upon learning of the cancellation, Mr. Misraje brought the idea to Carolla and convinced him to

5  immediately start a daily podcast in order to retain his avid fan base.

6      2.      Carolla agreed, and, without missing a single day "on air" Mr. Misraje recorded,

7  mixed and prepared for internet upload the very first episode of The Adam Carolla Podcast, later

8  renamed The Adam Carolla Show (the "ACS").  Although the ACS had meager beginnings (Mr.

9  Misraje taping the first episode with only his own handheld microphone and cables, a laptop and a

10  small digital converter), Mr. Misraje's vision to build a "multi-media podcast network" was

11  sweeping.  Shortly after the first episode of the ACS, which broke internet records for downloads,

12  Carolla and Mr. Misraje formed a partnership, which includes The ACE Broadcasting Network[1] (the

13  "Partnership").

14      3.      From the beginning, Mr. Misraje believed strongly in the concept and in his friend

15  Carolla's constant reassurances and commitment to their Partnership.  Indeed both Mr. Misraje and

16  his wife Kathee Schneider-Misraje, each on their own accord, left successful careers in the

17  entertainment business to work full time for the Partnership, building the business from the ground

18  up.  Mr. Ganz later devoted himself in the same manner.

19      4.      While Carolla continued to collect a handsome paycheck under the duration of his

20  CBS Radio contract and insisted that Plaintiffs could not pursue advertising revenue until his

21  contract expired, Plaintiffs forewent any compensation for over a year and lived off a home equity

22  line of credit in exchange for the promise of deferred partnership distributions (in the case of Mr.

23  Misraje and Mr. Ganz) and deferred wages (in the case of Mrs. Schneider-Misraje) once the

24  Partnership became profitable.  Plaintiffs contributed the overall concept, creative vision, business

25  acumen, technical know-how and over $10,000 in personal equipment and supplies.  They

26

27

28  [1] Very recently Carolla, likely in reaction to this dispute, has dropped the name "The ACE Broadcasting Network" and replaced it with the name "Carolla Digital."

DOLL AMIR & ELEY LLP

2
COMPLAINT

1  additionally put in the sweat equity to make it successful—all at a time when Carolla admittedly had

2  no other job opportunities.  They did so in good faith and on the constant reassurances of Carolla

3  that they were "building a network together" and that they would "all get rich" and all "look forward

4  to sending [their] kids to an expensive college."

5       5.       The hard work of Plaintiffs ultimately paid off—in 2010 the Partnership netted

6  significant profits and by 2011 increased its profit margin by approximately 75%.  Carolla succeeded

7  in inducing Plaintiffs to develop the foundations of a profitable business; however, once the business

8  began to take off, Carolla sought to exclude Plaintiffs from the profits they are owed under the

9  partnership agreement.  Though Carolla has repeatedly acknowledged the partnership agreement

10  between himself (60%), Mr. Misraje (30%) and Mr. Ganz (10%) (the "Partnership Agreement"), he

11  has since wrongfully "kicked" Plaintiffs out of the business and seeks to exclude them from their

12  share of the Partnership profits, all while he continues to reap the benefits of the business that

13  Plaintiffs conceived of and developed.  Plaintiffs are now forced to take this legal action to realize

14  the gains promised by Carolla and established between the parties.

15                          THE PARTIES

16       6.       Plaintiff Donny Misraje is an individual residing in the County of Los Angeles.

17       7.       Plaintiff Kathee Schneider-Misraje is an individual residing in the County of Los

18  Angeles and is the spouse of Mr. Misraje.

19       8.       Plaintiff Sandy Ganz is an individual residing in the County of Los Angeles.

20       9.       Defendant Adam Carolla is an individual residing in the County of Los Angeles.

21       10.      Defendant Lotzi Digital, Inc. is a corporation formed under the laws of the state of

22  California.  Plaintiffs are informed and believe, and on that basis allege, that Defendant Lotzi

23  Digital, Inc. holds assets rightfully belonging to the Partnership.  It is further alleged, on information

24  and belief, that Defendant Carolla at various times used Defendant Lotzi Digital, Inc. to bring money

25  and property in and out of the Partnership, including to deposit Partnership income and pay

26  Partnership expenses.

27       11.      The true names and capacities, whether individual, corporate, associate or otherwise,

28  of Defendant Does 1 through 15, inclusive, are unknown to Plaintiffs, and Plaintiffs therefore sue

DOLL AMIR & ELEY LLP

3
COMPLAINT

1   said Defendants by such fictitious names.  Plaintiffs will amend this Complaint to show the true

2   names and capacities when they have been ascertained.

3       12.     Plaintiffs are informed and believe, and on that basis allege, that each of the

4   Defendants named herein as Doe is in some way responsible for the acts and events alleged herein.

5       13.     Plaintiffs are informed and believe, and on that basis allege, that at all times

6   mentioned herein, Defendants, including Doe Defendants, and each of them, were the agents,

7   servants, employees, representatives, partners, subsidiaries, affiliates, joint venturers or alter-egos of

8   each other, and in doing the things herein alleged, were acting within the full course and scope of

9   such relationship, and with the full knowledge, authorization, consent and ratification, either express

10  or implied, of each of the other Defendants.

11                        FACTS COMMON TO ALL CAUSES OF ACTION

12      A.     As Carolla's Radio Show Comes To An End, Mr. Misraje Presents Him With A

13             New Opportunity.

14      14.     In February of 2009, CBS Radio cancelled Carolla's radio show on the station KLSX.

15  Recognizing the untapped potential of the new digital frontier, Mr. Misraje had been encouraging

16  Carolla to experiment with internet entertainment for years.  With the imminent cancellation of

17  Carolla's terrestrial radio show, and no employment opportunity in sight for Carolla, Mr. Misraje

18  implored him to seize the opportunity to move his well-established radio audience over to the

19  podcast format, not only keeping him relevant and saving his career, but bringing him to a brand

20  new digital audience and further expanding his fan base.  Misraje assured Carolla that he would

21  handle all aspects of the business such that Carolla could "show up and talk" (which meant

22  generally, as evidenced by the subsequent conduct of the parties, arriving minutes before the

23  broadcast began and leaving the moment it ended).

24      15.     On February 23, 2009—the Monday after Carolla's show went off KLSX—Mr.

25  Misraje recorded and uploaded the very first episode of the ACS.  Since that first broadcast, the ACS

26  has become the world's most downloaded podcast, with over 59.5 million downloads from March

27  2009 to March 2011.  Indeed, Carolla's audience has grown significantly since his days on the radio.

28  In addition, the ACS is recognized as one of the first, and certainly most successful, podcasts to

DOLL AMIR & ELEY LLP

4
COMPLAINT

:

1   monetize the format.   Carolla himself is now sometimes referred to as a "digital pioneer" based on

2   the unique and innovative production, distribution, and monetization practices conceived of and

3   developed by Plaintiffs.  On information and belief, the ACS has become the standard in podcast

4   production which other producers now attempt to replicate.

5        16.     As far back as the first episode, Carolla has widely admitted that Mr. Misraje

6   conceived of the ACS as a podcast—a format Carolla had no prior conceptual or technological

7   understanding of.  Indeed, until very recently, Carolla has credited Mr. Misraje in print and

8   television media as being the innovative force behind the ACS and the Partnership.  Examples

9   include the following:

10         a.     In Podcast Episode 1, Carolla stated: "I want to thank my buddy Donny...for

11               setting this experiment up";

12         b.     In Episode 3 of the Podcast, Carolla explained: "My buddy

13               Donny...convinced me to do this when I realized I was gonna get shit canned

14               over at KLSX."

15         c.     In a later episode, Carolla reiterated: "This whole thing was his [Mr.

16               Misraje's] idea," "I'd never really heard of podcasting, Donny forced it upon

17               me."

18         d.     In a June 2011 interview on Last Call With Carson Daly, Carolla stated:

19               "[M]y buddy Donny...about a week before I stopped the radio show said to

20               me...'Once you stop the radio you gotta start podcasting'";

21         e.     In the article, Adam Carolla: The New King of All Media?,

22               streamingmedia.com, April 21, 2011, Carolla recounted: "[M]y buddy...said

23               uh, 'hey you gotta do a podcast' and I said 'I don't know what that is.'" "I was

24               getting paid almost to stay home, I couldn't take another job in radio without

25               forfeiting my 10 months of payment that they owed me.  And the good news

26               is that the phone wasn't ringing, so it's not like anyone else wanted me to

27               work in radio either."

28

DOLL AMIR & ELEY LLP

01.17.2013

17.     More than just a singular podcast, Mr. Misraje envisioned and began building, with Carolla's full support and approval, an entire "multi-media podcast network" where multiple genres of podcasts would be broadcast to audiences under one umbrella network. The ACS was the first podcast in the larger "ACE Broadcasting Network"—a name also coined by Mr. Misraje.

B.     *Misraje and Carolla Enter Into a Partnership Agreement.*

18.     Within the first month of broadcasting the ACS, a fundamental problem was recognized: Carolla was still being paid under contract with CBS Radio and contractually barred from competing with CBS for advertising dollars. Thus, despite its explosive listenership, the ACS could not generate any revenue through advertising without interfering with Carolla's steady paycheck from CBS. Thus, Carolla insisted that Plaintiffs decline to pursue revenue for the new venture and forego compensation until his CBS contract expired. Mr. Misraje agreed to form a partnership with Carolla and forego compensation in exchange for an ownership interest in the business. Thereafter, in late March 2009, the parties entered into a partnership agreement wherein Carolla had a 70% ownership interest and Mr. Misraje had a 30% ownership interest in the Partnership.

19.     In order to work full time for the Partnership, Mr. Misraje quit a $231,000 a year job as a producer and editor. Likewise, Ms. Schneider-Misraje, an award winning producer and creative director, changed her focus from new content development and began working at least 40-60 hours per week for the Partnership. Both left their successful careers with the promise of future compensation as realized in the form of partnership dividends (in the case of Mr. Misraje) and wages (in the case of Mrs. Schneider-Misraje) that would compensate them retroactively for their time and effort. To support themselves while they deferred compensation, the Misrajes tapped into a $200,000 line of credit on their home equity and depleted the family's health insurance earned through Mr. Misraje's former employment. Although these decisions were difficult for the Misrajes, and even though Carolla himself suffered no detriment to his lifestyle given his CBS contract, the Misrajes believed in the business and Carolla's repeated assurances that, as partners, they were "all in this for the long haul" and that they would "all get rich" and be "sending [their] kids to an expensive college." Carolla assured the Misrajes, "We're taking this gamble together and it will pay

DOLL AMIR & ELEY LLP

1  off ten-fold in the end." Indeed, when Carolla was being courted to start a Sirius Satellite Radio

2  show in 2011, he reiterated to the partners that he had no intention of leaving the Partnership, stating

3  "I'm not leaving our business and I'm not stopping podcasting."

4      C.    *2009-2010: The Partnership Grows and Expands.*

5      20.    In April 2009, Mr. Ganz, who was previously providing technical support to the ACS

6  on a pro bono basis, officially began working for the Partnership. As a first matter of business, Mr.

7  Ganz rebuilt, from scratch, www.adamcarolla.com and setup reliable hosting service for the website,

8  which hosted the ACS and all other Partnership shows.

9      21.    In July 2009, the Partnership began producing and broadcasting additional shows, the

10  first of which was co-created, co-produced and co-hosted by Mr. Ganz and called "CarCast"—a

11  show that Carolla continues to produce and air.

12      22.    Although the ACS would not be able to generate revenue through advertising until

13  the expiration of Carolla's contract with CBS on December 31, 2009, throughout the late summer

14  and fall of 2009, the Misrajes (in particular, Ms. Schneider-Misraje) began laying the groundwork

15  for obtaining advertising revenue in the new year. Sales and marketing materials were developed

16  and contacts with potential advertisers began in earnest. At the same time, the Partnership added

17  additional podcasts and increased staffing through hiring three part time interns and two additional

18  part time producers[2].

19      23.    In October 2009, in an effort to find revenue streams not impeded by Carolla's

20  contract with CBS, it was suggested that Carolla perform stand-up comedy at local comedy clubs.

21  The idea was almost summarily dismissed by Carolla who was not comfortable with performing a

22  traditional, pre-written, pre-rehearsed stand-up act. Mr. Misraje then suggested that Carolla take the

23  core technological elements of the ACS podcast that Mr. Misraje had developed, such as live

24  internet searching, Skype interviewing and video and photo display, and perform a live, multimedia,

25  interactive improvisational show. Because of Mr. Misraje's innovations, the resulting "Live Shows"

26

27  [2] Prior to hiring the two part time "floating" producers, Mr. and Ms. Schneider-Misraje were almost
28  single handedly producing every podcast for the Partnership.

7
**COMPLAINT**

1   have been called "the next evolution of stand up." Carolla fully supported the idea and the first

2   "Live Show" was performed and recorded on December 16, 2009.

3       24.     As 2010 began and Carolla's contract with CBS expired, the ACS finally began to

4   generate advertising revenue.  The Partnership also expanded its content throughout 2010, adding

5   eight podcasts to the lineup, including "The Parent Experiment"—a show created and produced by

6   Ms. Schneider-Misraje and which is still being broadcast by the Partnership under the title "For

7   Crying Out Loud."

8       25.     In 2010, the group also began to perform Live Shows almost every weekend (the

9   ACS is taped Sunday through Thursday).  Mr. Misraje, in addition to his day-to-day duties running

10  the Partnership, traveled to every location and singlehandedly wired, directed, produced and

11  recorded the Live Shows, and paid Mike August, a "Live Show Booker," out of his partnership

12  percentage.

13      D.      *October 2010: Mr. Ganz Joins The Partnership.*

14      26.     On October 12, 2010, Carolla and Mr. Misraje voted to bring Mr. Ganz in as a third

15  partner, at a 10% ownership interest[3].  Thus, from October 2010 through the present, the partnership

16  interests are as follows: Carolla owns a 60% interest, Mr. Misraje owns a 30% interest and Mr. Ganz

17  owns a 10% interest.

18      27.     By the end of 2010, both the ACS and Live Shows had generated significant income.

19  Nevertheless, throughout much of 2010, the Misrajes and Mr. Ganz continued to forego any

20  compensation whatsoever (through partnership distributions or otherwise), even though they worked

21  full time for the Partnership.

22      E.      *2011: The Partnership Continues To Grow, But Outside Forces Begin To*
23              *Undermine The Partnership.*

24      28.     While the Partnership, including the Live Shows, continued to grow in 2011, there

25  arose several points of contention between the parties.  One such point of contention arose when Mr.

26  _____

27  [3] Carolla and Mr. Misraje talked of bringing on Mr. Ganz as a partner almost from the beginning, but
28  it was not until October 2010 that his partnership was made official.

DOLL AMIR & ELEY LLP

1  Misraje and Mr. Ganz sought to enforce their rights to equal decision making among the partners

2  regarding the Partnership's operation and business strategy.  Despite their relationship as long-time

3  friends and legal relationship as partners, Carolla became increasingly dictatorial and threatening.

4  At about this time, Carolla purported to mandate that Mr. Misraje cease traveling to the Live Show

5  events and threatened to exclude the Live Show revenues from the Partnership income.

6       29.     In May 2011, Carolla wrote Mr. Misraje an email insisting that the Partnership hire

7  another person as the "Chief Financial Officer" and give him a 5% stake in the Partnership (to be

8  taken from Mr. Misraje's shares).  Carolla's email also attacked Mr. Misraje personally and

9  threatened to kick Mr. Misraje out of the Partnership.  In his authoritarian fashion, Carolla also

10  unilaterally purported to place Mr. Misraje on a three-month "probation" period and refused to

11  discuss with Mr. Misraje the questionable business practices of certain individuals working for the

12  Partnership (who have since been fired by Carolla for such practices).

13       F.     *September 2011: Carolla Unilaterally Purports To Summarily "Fire" Mr. Misraje*

14              *From The Partnership.*

15       30.     Despite the fact that Mr. Misraje and Carolla were partners and unable to "place"

16  each other "on probation," Mr. Misraje chose to work harder than ever for the Partnership and

17  comply with Carolla's request to stop asking to discuss the business.  Although Mr. Misraje told

18  Carolla that he did not agree with the purported "probation," Mr. Misraje's ultimate decision to

19  comply was out of allegiance to his friend, the company's employees, and his continued belief in the

20  Partnership they built together.

21       31.     In August 2011, a month after the end of the "probationary" period, Carolla

22  acknowledged Mr. Misraje's dedication and cooperation and made the following statement on video

23  tape: "Donny, your attitude's been great lately and it's been turned around, and that's all I want—

24  that's all I'm looking for.  So, you've got to give him [referring to Mr. Ganz] a little shot of

25  whatever you've been putting in your coffee lately and everyone's going to get rich, I guarantee it."

26       32.     In spite of Carolla's unprovoked statements that Mr. Misraje's attitude "has been

27  great lately" and his guarantee that they're all "going to get rich," and without any incident or reason

28  provided to Mr. Misraje, Carolla contacted Partnership staff in September 2011, outside of the

DOLL AMIR & ELEY LLP

@1/17/2013

1   presence of Mr. Misraje, and notified them that the Misrajes were "leaving the company."  Shortly

2   thereafter, on September 11, 2011, Carolla sent Mr. Misraje an email purporting to summarily

3   dismiss Mr. Misraje.  Later, in or about October 2011, Carolla requested that Mr. Ganz stop

4   engaging in Partnership business.

5          33.     Plaintiffs are informed and believe and thereon allege that by the close of 2011, the

6   Partnership, which includes the Live Shows, generated significant profits.

7          34.     Since unilaterally ousting Mr. Misraje and Mr. Ganz from the Partnership, Carolla

8   has attempted to paint a picture for the public that Mr. Misraje was insubordinate, unable to "get

9   along" with anyone, unproductive and simply not "up to the job."  Such statements represent

10  disingenuous rhetoric, as the Misrajes and Mr. Ganz spent years successfully developing the

11  business aspects of the Partnership and sacrificed much of their lives, professional reputations and

12  personal net worth in reliance upon a future payoff promised by Carolla.

13         G.      **Plaintiffs Made Significant Contributions to the Partnership.**

14         35.     Plaintiffs contributed significantly to all aspects of the business, creating a broad

15  multi-media entertainment network.  Each person labored extensively and placed their livelihoods on

16  the line in order to ensure a successful business. Plaintiffs received little or no help from anyone else

17  on the tasks they performed during much of the early Partnership years, spending extensive hours in

18  the studio, without assistance, day after day.  Plaintiffs trained in whole or in part every employee of

19  the company.  Plaintiffs did this all in reliance on Carolla's promises of future and continuing

20  partnership profits that would not only provide future gains to all of the partners but compensate

21  them retroactively for their then-present efforts.

22                 1.      *The Contributions Of Donny Misraje.*

23         36.     Mr. Misraje conceived of the idea of moving Carolla into a podcast format.  By doing

24  so, Mr. Misraje created a vehicle that allowed Carolla to speak freely, without involvement of the

25  FCC or network executives, or the interruption of traditional advertising breaks—a formula that has

26  proven to be lucrative.  Indeed, this vehicle essentially turned around Carolla's career, keeping him

27  relevant, introducing him to a new digital audience, expanding his fan base, and bringing him from a

28

1  cancelled show and no immediate employment opportunities to having one of the most downloaded

2  podcasts of all time and several multimillion dollar contracts on the table.

3       37.    On top of the success of the ACS and the Live Shows, the Partnership has become a

4  direct marketing line for Carolla's other products, including his books and his "Mangria" line of

5  alcoholic beverages initially conceived of and marketed during the years Plaintiffs were working

6  daily on the Partnership.  Indeed, Carolla has touted the marketing power of the podcasts, stating

7  "[t]he podcast is a platform.  It helps to sell books, to sell out theaters, promote whatever project

8  you're doing.  I sold 20,000 copies of my book two months before it came out, and ended up in the

9  top 10 on Amazon just from the podcast.  It puts money in my pocket."  In fact, the Partnership has

10  never been reimbursed for the at least $250,000 worth of advertising time, company labor and

11  resources used by Carolla to promote his books alone on the ACS and elsewhere.

12       38.    In addition to originating this business opportunity, Mr. Misraje implemented and

13  brought it into fruition as well.  In conjunction with running the day-to-day operation of the

14  Partnership and the ACS, Mr. Misraje also made significant contributions to the growth and success

15  of the business, including:

16      •     Developing and implementing "Micro Production" and "Micro Broadcasting"—an

17             innovative recording process utilizing a unique combination of minimal equipment

18             (simple laptop computers and small recording devices) and personnel—allowing a

19             mobile and economical means of broadcasting without sacrificing recording quality;

20      •     Devoting countless hours of manual labor spent wiring the studio, running cable,

21             mounting monitors, cameras and microphones, singlehandedly wiring remote

22             locations and night clubs for the Live Shows he directed and recorded, and

23             performing a multitude of other tasks related to the technical operation of the

24             Partnership, including the Live Shows;

25      •     Integrating various communication mediums, including Skype, Ustream, Facebook

26             and Twitter into the ACS to further distinguish it from its competitors;

27

28

DOLL AMIR & ELEY LLP

01/17/2013

11

**COMPLAINT**

1    •   Developing and implementing additional podcasts to run in conjunction with the

2        ACS[4], many of which remain profitable or at least self-sustaining through

3        advertisings sales;

4    •   Integrating various technologies (including internet searching and Skype) into the

5        Live Shows in order to provide unprecedented interactivity with the audience,

6        features which have distinguished it from typical stand-up performances;

7    •   Developing and implementing novel advertising plans for all shows (including all

8        podcasts and Live Shows) to allow greater flexibility, dispensing with the

9        conventional 30-60 second pre-recorded roll-ins or live reads typically used in the

10       commercial radio world.

11   39.   Mr. Misraje undertook these responsibilities at a significant cost and risk to himself

12   and his family.  Mr. Misraje quit a lucrative production career and forwent compensation as a partner

13   of the Partnership in order to allow the business to develop and grow.

14   40.   Furthermore, Mr. Misraje contributed at least $10,000 in capital to the venture,

15   contributed significant sums in operational expenses, intellectual property and contributed a

16   considerable amount of technical equipment, hardware, furniture and supplies.

17   41.   While making these sacrifices and contributions, the Misrajes were forced to live off

18   of a home-equity line to the tune of approximately $200,000 and exhausted their accrued health

19   insurance hours earned through Mr. Misraje's trade union.  Clearly, Mr. Misraje made these

20   sacrifices and contributions to ensure that this business—which was in part *his* business—would

21   grow and succeed—and was promised by Carolla that he would be rewarded with exponential gains

22   in the future.

23        2.   *The Contributions Of Sandy Ganz.*

24   42.   As a majority of the Partnership's content relies heavily on delivery through the

25   internet, creating and maintaining an internet presence was crucial.  Thus, the work of Mr. Ganz was

26

27   _____

28   [4] Note, Carolla continues to launch shows that were in development while the Plaintiffs were
     working daily at the company.

DOLL AMIR & ELEY LLP

also vital to the business's success.  Given that the original podcast website was antiquated and inadequate, Mr. Ganz was brought onboard around mid-April 2009 to establish and improve the Partnership's internet presence.

43.    Mr. Ganz accomplished this by rebuilding the entire website from scratch and maintaining it for the Partnership.  Mr. Ganz built, launched, and maintained websites for each of the additional ventures the business branched off into including, for example, the shows *Ace On The House*, *This Week With Larry Miller*, *Life Lessons With Jim Carolla*, and *CarCast*, as well as working on the online and transactional aspect of the Live Shows.

44.    In addition to building, rebuilding, maintaining, and providing IT and customer support for the various websites (which in and of itself was a time-consuming task), Mr. Ganz made significant contributions to the growth of the business itself as well.  For example, these contributions include:

- Devising a superior method for compressing the Partnership's digital content, thereby reducing the high cost of bandwidth by approximately 40%;

- Selecting equipment for both the podcast shows and Live Shows;

- Building the first dedicated uStreamTV streaming server and performing all video encoding and decoding required;

- Developing and servicing nearly all of the Partnership's major advertising partnerships, including one of the most lucrative advertising partners—Amazon.com;

- Turning the ACS, Live Show and other Partnership recordings into revenue streams through their sale on various digital media distributors.  In addition, managing Live Show digital sales on several media outlets, such as iTunes;

- Participating in the development of several lucrative advertising campaigns, including the campaigns of Citrix, Discount Tires and ManGrate;

- Managing all internet promotion and scheduling for the Live Shows;

- Providing daily analytics on the Amazon.com revenue; and

- Assisting in the actual content of the shows, including co-creating, co-producing and co-hosting the *CarCast* podcast.

DOLL AMIR & ELEY LLP

45.     Indeed, Mr. Ganz's weekly time commitment to the business was often in excess of 60 hours per week.  Due to the technical nature of his contributions, Mr. Ganz was always "on call" to manage and troubleshoot all of the IT infrastructures.

3.     *The Contributions Of Kathee Schneider-Misraje.*

46.     The contributions of Ms. Schneider-Misraje are significant and must not be overlooked.  Although she does not have a direct ownership interest in the business (other than her community property interest in that which her husband owns), she provided tireless services as an employee of the Partnership for which she was only partially compensated.

47.     Prior to working for the Partnership, Ms. Schneider-Misraje worked extensively as a creative director and producer.  With over 20 years experience in traditional and digital media, Ms. Schneider-Misraje ran several creative departments.  For her work, Ms. Schneider-Misraje has been awarded a Grammy, an MTV Video Award and numerous other film and television awards, and has been nominated for additional Grammy and MTV awards.

48.     While working for the Partnership, Ms. Schneider-Misraje worked 40-60 hours per week beginning in February 2009.

## FIRST CAUSE OF ACTION

(Breach of Partnership Agreement)

(Plaintiffs Mr. Misraje and Mr. Ganz Against Carolla)

49.     Plaintiffs repeat and adopt paragraphs 1 through 48, inclusive, of this Complaint as though fully set forth herein.

50.     Plaintiff Mr. Misraje and Carolla entered into a valid oral Partnership Agreement in late March 2009.  On October 12, 2010, the Partnership Agreement was validly modified by agreement of all existing partners to include Plaintiff Mr. Ganz as a partner.  The Partnership includes, but is not limited to, The ACE Broadcasting Network[5], each of its podcasts and the Live Shows.

---

[5] Again, which is now publically referred to as "Carolla Digital."

51.     Under the modified Partnership Agreement, Carolla owns 60% of the Partnership, Mr. Misraje owns 30% of the Partnership and Mr. Ganz owns 10% of the Partnership.

52.     Plaintiffs Mr. Misraje and Mr. Ganz performed all conditions, covenants and promises required to be performed on their part in accordance with the terms of the Partnership Agreement.

53.     Carolla has breached the Partnership Agreement by failing to distribute to Plaintiffs their pro rata shares of the Partnership profits.

54.     Plaintiffs are informed and believe and on that basis allege that Carolla has failed in breach of the Partnership Agreement to provide Plaintiffs with an accurate accounting of the Partnership books and records, including an accurate accounting of the Live Show revenues, despite Plaintiffs' demand for an accurate accounting on numerous occasions.

55.     Plaintiffs are informed and believe and on that basis allege that Carolla has failed in breach of the Partnership Agreement to compute the Partnership net profits and each partner's capital account in accordance with generally accepted accounting principles, consistently applied.

56.     Carolla has further breached the Partnership Agreement by obstructing Plaintiffs' rights to equally manage and conduct partnership business.

57.     There is a covenant of good and fair dealing in every contract that implies that no party will do anything that will have the effect of destroying or injuring the right of any other party to receive the fruits of the contract.  Carolla has breached the implied covenant of good faith and fair dealing by acting in the manner alleged in this Complaint.

58.     Other wrongful acts and/or omissions constituting breach by Carolla of the Partnership Agreement are presently unknown.  Plaintiffs will seek leave of Court in order to amend this Complaint once such additional facts are ascertained through discovery.

59.     As a direct and foreseeable result of the breaches of the Partnership Agreement by Carolla, Plaintiffs have been damaged in an amount according to proof within the jurisdiction of this Court.

1   60.    Due to Carolla's continuing breaches of the Partnership Agreement as alleged herein,

2   Plaintiffs are continuing to suffer great and irreparable injury. Such injury is difficult or impossible

3   to fully compensate with monetary damages.

4                              SECOND CAUSE OF ACTION

5                              (Breach of Fiduciary Duty)

6                    (Plaintiffs Mr. Misraje and Mr. Ganz Against Carolla)

7   61.    Plaintiffs repeat and adopt paragraphs 1 through 60, inclusive, of this Complaint as

8   though fully set forth herein.

9   62.    As a partner of the Partnership, Carolla at all times owed, and continues to owe, the

10  Partnership fiduciary duties of loyalty and care.  Pursuant to such fiduciary duties, Carolla was and is

11  required to act in the utmost good faith towards the Partnership and to avoid acts and omissions that

12  are adverse to the interests of the Partnership.  Plaintiffs provided no cause for Carolla to act in any

13  manner inconsistent with this fiduciary relationship.

14  63.    Carolla has breached his fiduciary duties, including the duty of loyalty and care, to

15  Plaintiffs, by engaging in the acts and omissions alleged above.

16  64.    Carolla intended to induce Plaintiffs to rely on their fiduciary relationship, and in

17  reasonable reliance thereon, Plaintiffs were induced to and did continue their fidelity.

18  65.    As a direct and foreseeable result of Carolla's breaches of fiduciary duty, Plaintiffs

19  have sustained damages in an amount according to proof within the jurisdiction of this Court.

20  66.    The aforementioned conduct was intentional on the part of Carolla to thereby deprive

21  Plaintiffs of property and legal rights and otherwise cause injury, and was despicable conduct that

22  subjected Plaintiffs to cruel and unjust hardship and oppression in conscious disregard of their rights,

23  so as to justify an award of exemplary and punitive damages.

24                              THIRD CAUSE OF ACTION

25                          (For Dissolution of Partnership)

26              (Plaintiffs Mr. Misraje and Mr. Ganz Against All Defendants)

27  67.    Plaintiffs repeat and adopt paragraphs 1 through 66, inclusive, of this Complaint as

28  though fully set forth herein.

DOLL AMIR & ELEY LLP

68.     Plaintiffs are entitled to the dissolution of the Partnership, winding up of its affairs and distribution of its assets pursuant to California Corporations Code ("Corp. Code") sections 16801, *et seq.*

69.     Dissolution of the Partnership is necessary at this time for reasons including but not limited to:

a.     To protect the rights and interests of Plaintiffs;

b.     Carolla has engaged in conduct relating to the partnership business that makes it not reasonably practicable to carry on the business in partnership with him;

c.     Carolla breached his fiduciary duty owed to Plaintiffs;

d.     It is not otherwise reasonably practicable to carry on the partnership business in conformity with the Partnership Agreement; and

e.     The management of the Partnership is subject to internal dissension.

70.     Carolla's conduct is impeding the proper conduct of the operations of the Partnership and the protection of its assets.  Carolla has refused to cooperate in resolving the issues concerning the Partnership to the extent that all confidence and cooperation between the parties herein has been destroyed.

## FOURTH CAUSE OF ACTION

(For Imposition of A Constructive Trust)

(Plaintiffs Mr. Misraje and Mr. Ganz Against All Defendants)

71.     Plaintiffs repeat and adopt paragraphs 1 through 70, inclusive, of this Complaint as though fully set forth herein.

72.     Under the Agreement, the partners of the Partnership, including Carolla, are to engage in the business of developing and operating The ACE Broadcasting Network, which includes but is not limited to producing and exploiting each of the Network's podcasts, including ACS, and the Live Shows.

73.     Plaintiffs are informed and believe and thereon allege that Carolla, with the assistance of third parties, operated and continues to operate The ACE Broadcasting Network (regardless of the fact that it is now commonly referred to as "Carolla Digital"), including participating in podcasts,

DOLL AMIR & ELEY LLP

1   Live Shows and other distribution deals and appearances that directly exploit the assets of the

2   Partnership, and have collected considerable sums of money doing so.

3      74.   The money so gained is rightfully the property of the Partnership and, accordingly,

4   Defendants should be deemed acting as the constructive trustee of such monies for the Partnership's

5   benefit.

6                        **FIFTH CAUSE OF ACTION**

7                              (Conversion)

8         (Plaintiffs Mr. Misraje and Mr. Ganz Against All Defendants)

9      75.   Plaintiffs repeat and adopt paragraphs 1 through 74, inclusive, of this Complaint as

10  though fully set forth herein.

11     76.   Plaintiffs Mr. Misraje and Mr. Ganz, as partners of the Partnership, owned, possessed

12  and/or were entitled to immediate possession at the time of conversion to the personal property,

13  assets and profits in a sum capable of identification of the Partnership.

14     77.   Plaintiffs are informed and believe and on that basis allege that Defendants have

15  intentionally taken possession of, transferred and/or prevented Plaintiffs from having access to the

16  Partnership's personal property, profits and/or assets for a significant period of time after Plaintiffs

17  demanded its return.

18     78.   Plaintiffs did not consent to Defendants' actions.

19     79.   As a result of Defendants' conversion, Plaintiffs have suffered damage and lost

20  profits in a sum capable of identification in an amount according to proof within the jurisdiction of

21  this Court.

22     80.   Defendants' conduct was a substantial factor in causing Plaintiffs' harm.

23                        **SIXTH CAUSE OF ACTION**

24                          (For an Accounting)

25     81.   Plaintiffs repeat and adopt paragraphs 1 through 80, inclusive, of this Complaint as

26  though fully set forth herein.

27     82.   The amount of all the assets and liabilities of the Partnership is unknown to Plaintiffs

28  and cannot be ascertained without an accounting of the profits, losses and expenditures that occurred

DOLL AMIR & ELEY LLP

1  during the operations of the Partnership as well as all other enterprises in which the Partnership owns

2  an interest.

3       83.     Under the Partnership Agreement, assets of the Partnership belong to the partners in

4  the proportions set forth above.

5                          **SEVENTH CAUSE OF ACTION**

6                               (Quantum Meruit)

7                        (All Plaintiffs Against All Defendants)

8       84.     Plaintiffs repeat and adopt paragraphs 1 through 83, inclusive, of this Complaint as

9  though fully set forth herein.

10      85.     In the event that Plaintiffs Mr. Misraje and Mr. Ganz are for some reason found not to

11  be partners with Carolla in the Partnership as described herein above, Plaintiffs plead the instant

12  cause of action for quantum meruit as to Mr. Misraje and Mr. Ganz strictly in the alternative.

13      86.     Defendants requested, by words or conduct, that Plaintiffs perform the labor and

14  services outlined herein above for the benefit of Defendants.

15      87.     Plaintiffs performed the labor and services as requested.

16      88.     Defendants have not paid, or not fully paid, Plaintiffs for those services.

17      89.     Plaintiffs are entitled to the reasonable value of the labor and services provided, plus

18  pre-judgment interest.

19                          **EIGHTH CAUSE OF ACTION**

20                          (Breach of Employment Contract)

21               (Plaintiff Kathee Schneider-Misraje Against All Defendants)

22      90.     Plaintiffs repeat and adopt paragraphs 1 through 89, inclusive, of this Complaint as

23  though fully set forth herein.

24      91.     Plaintiff Ms. Schneider-Misraje was an employee of the Partnership from February

25  2009 through 2011. During that period of time, pursuant to an oral contract for employment, she

26  worked at the Partnership at least 40-60 hours per week for which she was entitled to an hourly rate

27  of compensation.

28

DOLL AMIR & ELEY LLP

92.     Plaintiff Ms. Schneider-Misraje performed all obligations required of her under the employment contract.

93.     Plaintiff Ms. Schneider-Misraje, however, did not receive some of the wages she was entitled to under her employment contract.  As a direct and proximate result of the aforementioned breach by Defendants, and each of them, Plaintiff Ms. Schneider-Misraje has been damaged in an amount according to proof within the jurisdiction of this Court, for earned but unpaid wages.

## NINTH CAUSE OF ACTION

### (Common Count: For Labor Provided)

### (All Plaintiffs Against All Defendants)

94.     Plaintiffs repeat and adopt paragraphs 1 through 93, inclusive, of this Complaint as though fully set forth herein.

95.     In the event that Plaintiffs Mr. Misraje and Mr. Ganz are for some reason found not to be partners with Carolla in the Partnership as described herein above, Plaintiffs plead the instant cause of action for common count: labor provided as to Mr. Misraje and Mr. Ganz strictly in the alternative.

96.     Plaintiffs provided for the Partnership work, labor and services rendered at the special instance and request of the Partnership and for which Defendants promised to pay Plaintiffs.

97.     The Partnership, however, failed to pay Plaintiffs all or some portion of the full amount due to them.

98.     There is now due, owing and unpaid from Defendants to Plaintiffs, an amount to be proven at trial, plus pre-judgment interest.

## TENTH CAUSE OF ACTION

### (Labor Code Violations: Failure to Pay Wages; Failure to Pay Overtime, etc.)

### (All Plaintiffs Against All Defendants)

99.     Plaintiffs repeat and adopt paragraphs 1 through 98, inclusive, of this Complaint as though fully set forth herein.

DOLL AMIR & ELEY LLP

100.   In the event that Plaintiffs Mr. Misraje and Mr. Ganz are for some reason found not to be partners with Carolla in the Partnership as described herein above, Plaintiffs plead the instant cause of action for Labor Code violations as to Mr. Misraje and Mr. Ganz strictly in the alternative.

101.   At the time Plaintiffs' employment with the Partnership was terminated, Defendants failed to pay all wages accrued to them in violation of California Labor Code ("Cal. Lab. Code") section 201. Since Plaintiffs' termination, they have been available and ready to receive wages due and owing to them and, thus, are entitled to unpaid wages in an amount to be proven at trial.

102.   In addition to wages due and owing, Plaintiffs are entitled to waiting time penalties as provided in Cal. Lab. Code section 203. Pursuant to Cal. Lab. Code section 218.5, Plaintiffs request the Court to award reasonable attorneys' fees and costs incurred by them in this action.

103.   Additionally, throughout the duration of Plaintiffs' involvement with the Partnership, Defendants failed to pay them any overtime compensation, despite the fact that they often worked beyond the statutorily prescribed workday, in violation of Cal. Lab. Code sections 1194 and 1198. Plaintiffs are, therefore, entitled to overtime compensation in an amount to be proven at the time of trial. Pursuant to Cal. Lab. Code section 1194, Plaintiffs request that the Court award reasonable attorneys' fees and costs incurred by them in this action.

104.   Plaintiffs are also entitled to meal and rest period penalties pursuant to Cal. Lab. Code section 558, in connection with Defendants' failure to provide them with the statutorily guaranteed meal and rest breaks throughout their employment with the Partnership in violation of Cal. Lab. Code section 512 (a).

105.   Plaintiffs are also entitled to civil penalties and attorneys' fees and costs pursuant to Cal. Lab. Code sections 226(e) and 226.3 for Defendants' knowing and intentional failure to furnish an accurate itemized statement in writing showing Plaintiffs' gross wages earned, total hours worked, all deductions, net wages earned, and other information as required by Cal. Lab. Code section 226.

106.   As a result of Defendants' unlawful conduct, Plaintiffs have suffered damages and attorneys' fees (provided for by statute) in an amount according to proof within the jurisdiction of this Court.

DOLL AMIR & ELEY LLP

## ELEVENTH CAUSE OF ACTION

(Violation Of Business And Professions Code § 17200—Unlawful Business Practices)

(All Plaintiffs Against All Defendants)

107.   Plaintiffs repeat and adopt paragraphs 1 through 106, inclusive, of this Complaint as though fully set forth herein.

108.   In the event that Plaintiffs Mr. Misraje and Mr. Ganz are for some reason found not to be partners with Carolla in the Partnership as described herein above, Plaintiffs plead the instant cause of action for violation of Business and Professions Code section 17200, *et seq.* as to Mr. Misraje and Mr. Ganz strictly in the alternative.

109.   California Business and Professions Code ("Cal. Bus. & Prof. Code") section 17200, *et seq.* (the "Unfair Competition Law" or "UCL") prohibits any "unlawful...business act or practice."

110.   Defendants' activities constitute unlawful business practices in that they violate Cal. Lab. Code sections 201, 203, 226, 1194, 1198, and 512 (a).

111.   Defendants have been unjustly enriched by their unlawful business practices. Moreover, Plaintiffs have suffered real and monetary harm as a proximate result of Defendants' unlawful activities and seek restitution for all wage and hour violations, including but not limited to all unpaid wages, and seek civil penalties and attorneys' fees and costs pursuant to California Code of Civil Procedure section 1021.5. Plaintiffs respectfully request that the Court order any other and further equitable remedies as deemed necessary by the Court.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for relief as follows:

1.   For damages in an amount to be proven at trial;

2.   For the imposition of a constructive trust;

3.   For an order dissolving the Partnership;

4.   For unpaid wages in an amount to be proven at trial;

5.   For an accounting;

6.   For restitution in an amount to be proven at trial;

1    7.    For punitive damages in an amount to be proven at trial;

2    8.    For reasonable attorneys' fees and costs of suit incurred herein; and

3    9.    For such other and further relief as the court may deem just and proper.

4

5    DATED: January 17, 2013                    DOLL AMIR & ELEY LLP

6

7                                        By: _____

8                                           GREGORY L. DOLL
                                            RONALD M. ST. MARIE
9                                           L. KATIE FULSHER
                                            Attorneys for Plaintiffs Donny
10                                          Misraje, Kathee Schneider-Misraje,
                                            and Sandy Ganz

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28